## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>METAMORPHIX, INC.,<br><br>             Debtor. | Chapter 11<br>Case No. 10-10273 (MFW)<br><br>**Final Hearing date:  December 13, 2010, 9:30 a.m.**<br>**Interim Hearing date:  TBD**<br>**Objections due by: December 6, 2010, 4:00 p.m.** |

## DEBTOR'S MOTION FOR (A) ENTRY OF
## INTERIM AND FINAL ORDERS (I) APPROVING USE OF
## CASH COLLATERAL, (II) PROVIDING FOR ADEQUATE PROTECTION,
## AND (III) SCHEDULING FINAL HEARING ON USE OF CASH COLLATERAL

MetaMorphix, Inc. (the "Debtor"), debtor and debtor in possession in the above-captioned case, by its undersigned proposed attorneys, files this Motion For (A) Entry Of Interim and Final Orders (I) Approving Use Of Cash Collateral, (II) Providing For Adequate Protection, and (III) Scheduling Final Hearing On Use Of Cash Collateral, and in support hereof states as follows:

### JURISDICTION

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

2.      On January 28, 2010 (the "Petition Date"), this case was commenced by the filing of an involuntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").   On September 30, 2010 (the "Order for Relief Date"), the Court entered an Order for Bankruptcy Relief in this case and the case was converted to a case under Chapter 11 of the Bankruptcy Code.  Since the Order for Relief Date, the Debtor has managed its affairs

and remained in possession of its assets as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

4.     The Debtor is a Delaware corporation that owns and licenses bio-technology. As result of research and acquisitions, the Debtor has 35 issued U.S. patents and 73 pending U.S. patents. Additionally, it has developed partnerships and contracts with industry leaders in the commercial food and pet markets.

5.     Over the past ten years, the Debtor issued a series of convertible debt notes, some of which have been converted into equity and others of which have been re-issued as newer series notes. Specifically, there remain a series of 12.5% convertible secured notes (the "12.5% Notes") and a series of 10% secured convertible notes (the "10% Notes," and collectively with the 12.5% Notes, the "Notes") The 12.5% Notes are secured by a senior lien on the Debtor's assets, and the 10% Notes secured by a junior lien. The Notes were expected to be converted into common stock upon execution of an IPO, which did not occur.

6.     Together, the Debtor's outstanding 10% Notes and 12.5% Notes total approximately $56 million in principal and interest. As a consequence of a failed IPO, in December 2008, the Debtor asked the note holders to extend the maturity date of the Notes to January 2010. Over 80% of the Notes currently have maturity dates of January 2010 or beyond. At present, although the holders of approximately $8.5 million of the Notes refused to agree to maturity date extensions and all of these Notes are already past due, no collection or enforcement actions have been pursued outside of this Court. Rather, while restructuring negotiations had been actively underway, in January 2010, certain of the holders of the 10% Note filed a petition for involuntary relief against the Debtor.

7.     Other than the holders of the Notes (each a "Secured Creditor," and collectively, the "Secured Creditors"), the Debtor does not believe that any other creditor asserts liens, security interests, mortgages, or other secured claims against the Debtor's assets or its estate.

## RELIEF REQUESTED

8.     On and after the Order for Relief Date, the Debtor may have had, and may also acquire, cash in which some or all of the Secured Creditors may assert an interest ("Cash Collateral"). The Debtor has an immediate and urgent need to use its Cash Collateral. Absent the use of Cash Collateral, the Debtor will not be able to meet its working capital and liquidity needs, and its estate, and its creditors will suffer immediate and irreparable harm.

9.     By this Motion, the Debtor respectfully requests that the Court approve, on an interim and final basis, the Debtor's use of Cash Collateral (as defined below) pursuant to the terms and conditions of the proposed Interim Order (I) Authorizing Debtor's Use Of Cash Collateral, (II) Granting Adequate Protection To Secured Creditors, And (III) Scheduling A Final Hearing (the "Interim Order") attached hereto as **Exhibit 1**. The statutory and other authority for the relief requested is 11 U.S.C. §§ 361, 363, and 364, Fed. R. Bankr. P. 4001, and Del. Bankr.LR 4001-2.

10.     The Debtor requests relief on an interim basis in order to prevent immediate and irreparable harm to its estate. The Debtor proposes that the Court grant the final relief requested herein by entry of an order substantially in the form of Interim Order, subject to such modifications as are necessary or appropriate to conform to a request for final relief and deleting the scheduling of an additional hearing.

## SUMMARY OF ESSENTIAL TERMS

11.     Pursuant to Fed. R. Bankr. P. 4001 and Del. Bankr. L.R. 4001-2, the following are the material provisions of the Interim Order:

- The Debtor is authorized to use its Cash Collateral, upon the terms and conditions set forth in the Interim Order and in accordance with the budget attached to the Interim Order as Exhibit A (the "Budget").[1] The Budget also includes revenues and expenses associated with the operations of MMI Genomics, Inc. ("MMIG"), the Debtor's subsidiary, because the finances of the Debtor and MMIG were historically intertwined and interdependent.

- Subject to the terms of the Interim Order, to the extent of, and only to the extent of, any diminution in the value of the Secured Creditors' interest in Cash Collateral, but subject to the Carve-Out (as defined below), each of the Secured Creditors shall be granted additional and replacement security interests and liens (the "Adequate Protection Liens") in and upon all prepetition and postpetition assets and property of the Debtor (tangible, intangible, real, personal and mixed), whether now existing or newly acquired or arising, and wherever located, other than any avoidance actions existing or arising under Chapter 5 of the Bankruptcy Code ("Avoidance Actions"). Each of the Secured Creditors shall be entitled to attachment of Adequate Protection Liens on assets of the Debtor only with the same validity, priority, amount, and extent as each Secured Creditor's prepetition liens, and to the extent that any such liens may be subject to challenge, avoidance, or other limitation. To the extent that unencumbered funds are not available to pay administrative expenses in full, the Adequate Protection Liens shall be subject to payment of the Carve-Out.

- Any Adequate Protection Liens and any other interest in Cash Collateral shall be subject to and limited by the "Carve-Out," which means and includes: (a) any and all amounts due to the Clerk of the Court and to the United States Trustee pursuant to 28 U.S.C. § 1930(a); and (b) the aggregate accrued and unpaid fees and expenses payable under §§ 330 and 331 of the Bankruptcy Code to professionals retained pursuant to an order of the Court by the Debtor and any statutory committee that may be appointed in these cases. The Carve-Out shall survive the termination or expiration of the Interim Order. So long as the Interim Order shall remain in effect, the Debtor shall be permitted to pay administrative expenses allowable and payable under §§ 330 and 331 of the Bankruptcy Code, as the same may be due and payable pursuant to any orders of this Court.

- The requested authority to use Cash Collateral is conditioned upon the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code by MMIG, except to the extent that the agent for the 12.5% Noteholders agrees otherwise.

---

[1] The Budget reflects the Debtor's reasonable projection of the revenues and expenses that it will incur. The Debtor anticipates that the Budget may change between the filing of this motion and the hearing on interim or final relief.

The Debtor hereby states that the Interim Order does not contain any of the type indicated in any provision of the type indicated in Del. Bankr. L.R. 4001-2(a)(i).

## BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY

### I. THE DEBTOR REQUIRES THE USE OF CASH COLLATERAL.

12. Pursuant to § 363(c)(2) of the Bankruptcy Code, a debtor in possession may use cash collateral with the consent of all parties having an interest in the cash collateral or with the approval of the Court. See 11 U.S.C. § 363(c)(2)(A) and (B). By obtaining approval to use cash collateral, a debtor can continue to operate its business and maintain and enhance the value of its lender's collateral. *See In re River Oaks Ltd. P'ship,* 166 B.R. 94 (E.D. Mich. 1994); *In re T.H.B. Corp.,* 85 B.R. 192, 195 (Bankr. D.Mass 1988); *In re Constable Plaza Assocs.. L.P.,* 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor entitled to use cash collateral to operate and maintain office building, thereby protecting prepetition lender's collateral).

13. Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property used or proposed to be used by the debtor, the Court conditions such use upon the provision of adequate protection of the interest. 11 U.S.C. § 363(e). Adequate protection under § 363 may be provided by granting additional or replacement liens or by granting other relief. See 11 U.S.C. § 361(2) and (3).

14. Fed. R. Bankr. P. 4001(b) provides that a final hearing on the motion to use cash collateral may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary hearing on such a motion on an expedited basis and to authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate. *See* Fed. R. Bankr. P. 4001(b)(2).

15.     The Debtor seeks authorization to use Cash Collateral to fund the payment of any operating expenses incurred by the Debtor or MMIG on and after the Order for Relief Date, as set forth in the Interim Order and the Budget.  The inability of the Debtor to use Cash Collateral would have a materially adverse effect on its estate and creditors, as well as on MMIG. Without the immediate use of Cash Collateral, the Debtor will be unable to pay the expenses associated with operating its and MMIG's business.

16.     The Debtor also seeks to use Cash Collateral to fund other administrative expenses incurred during the pendency of this Chapter 11 case, including but not limited to (i) professional fees and expenses allowed by the Bankruptcy Court pursuant to §§ 330 and 331 of the Bankruptcy Code, (ii) reimbursement of allowed expenses incurred by the members of any official committee appointed in this case, (iii) fees payable under 28 U.S.C. § 1930 and related costs, and (iv) other charges incurred in administering the Debtor's Chapter 11 case.

17.     In sum, without immediate access to Cash Collateral, the ability of the Debtor and MMIG to maintain operations will be crippled, which will cause immediate and irreparable harm. The ability of the Debtor to remain a viable entity and to reorganize under Chapter 11 of the Bankruptcy Code therefore depends upon obtaining the relief requested herein.

18.     The Debtor believes that Christopher Paxos and Fritz C. Voelker, who both assert that they serve as the agent to enforce the security agreement in connection with the 12.5% Notes (the "Agent"),[2] have consented to the Debtors' use of Cash Collateral on an interim basis, subject to their review of the terms of the Interim Order and the Budget.

_____

[2] The Debtor is aware of a dispute between Messrs. Paxos and Voelker as to which properly serves as Agent for the 12.5% Notes.  To the extent that the Debtor can obtain the consent of both, or to the extent that the Court grants the Debtor authority to use its Cash Collateral over the objection of either, it is not necessary to resolve such dispute.

II.     ADEQUATE PROTECTION.

19.     The Debtor believes that the Agent is the only entity that has or asserts an interest in the Cash Collateral within the meaning of § 363(c)(2)(A) of the Bankruptcy Code.  Pursuant to the Interim Order, and in addition to the protections the Cash Collateral derives from the preservation of the value of the Agent's collateral, the Debtor proposes to grant the Agent replacement liens as adequate protection for the Debtor's use of Cash Collateral.

20.     The most important protection of the value of the Agent's collateral, including but not limited to the Cash Collateral that the Debtor proposes to use in accordance with the Interim Order, is the protection from what would likely be a near-100% erosion in value in the event that the Debtor and its subsidiary were to stop operating. The Debtor's primary assets are its intellectual property, which is useful only to the extent that there are employees and facilities to use it, and a group of non-debtor affiliates operating a separate business.  The Debtor relies upon its continuing cashflow and the cashflow of its affiliates in order to assure customers that it can continue to meet its business and research obligations.

21.     Despite the Debtor's use of Cash Collateral, the Debtor's net value is expected to increase.  The Debtor's revenues plunged when it lost an important customer in September 2009, but other contracts are replacing that customer's value.  Of key importance is for the Debtor to meet its ongoing operational and administrative expenses in order to produce the services to customers and preserve customer confidence.


INTERIM APPROVAL SHOULD BE GRANTED

22.     Fed. R. Bankr. P. 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than fourteen days after service of such motion. Upon

request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a hearing to consider the relief requested on a final basis.

23.     Pursuant to Fed. R. Bankr. P. 4001(b), the Debtor respectfully requests that the Court conduct an expedited preliminary hearing on this motion and authorize the Debtor to use Cash Collateral in amounts consistent with the Budget on an interim basis, pending a final hearing and entry of a final order, in order to finance the Debtor's business operations, preserve the value of the Debtor's assets, and avoid immediate and irreparable harm to the Debtor, its estate, its creditors, and all other parties in interest, and (c) schedule a final hearing.

24.     Notice of this Motion is being given to: (i) the Office of the United States Trustee; (ii) the twenty (20) largest unsecured creditors of the Debtor at their last known addresses; (iii) counsel for the two parties asserting that they act as Agent at their last known addresses, as well as the prior person serving as Agent according to the Debtor's books and records; and (iv) other parties that have filed requests for service of notices in this case. Under the circumstances, the Debtor asserts that adequate notice has been given and requests that the Court make that determination in its findings of fact and conclusions of law. To implement the foregoing immediately, the Debtor seeks a waiver of the notice requirements under Fed. R. Bankr. P. 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Fed. R. Bankr. P. 6004(h), to the extent that such stay applies.

WHEREFORE, the Debtor respectfully requests that the Court enter an order:

(A)     Entry of an order authorizing the Debtor to use its Cash Collateral on an interim basis, substantially in accordance with the terms of the Interim Order;

(B)    Entry of an order authorizing the Debtor to use its Cash Collateral on a final basis substantially in accordance with the terms of the Interim Order (other than the scheduling of further hearings on this motion);

(C)    Scheduling a final hearing on this motion; and

(D)    Granting such other and further relief as the Court may deem proper.


Dated: November 9, 2010              Respectfully submitted,
       Wilmington, Delaware

                                  PINCKNEY, HARRIS & WEIDINGER, LLC

                                **/s/ Adam Hiller**
                                Adam Hiller (DE No. 4105)
                                Donna Harris (DE No. 3740)
                                1220 North Market Street, Suite 950
                                Wilmington, Delaware 19801
                                (302) 504-1497 telephone
                                (302) 442-7046 facsimile

                                *Attorneys for the Debtor*