IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>METAMORPHIX, INC., *et al.*,<br><br>Debtors. | Chapter 11<br>Case Nos. 10-10273 (MFW), *et seq.*<br>(jointly administered)<br><br>Re Docket Nos.: 217, 240, 243, 244 |

### ORDER APPROVING SOLICITATION PROCEDURES, BIDDING PROCEDURES, SALE PROCEDURES, INCLUDING FORM AND MANNER OF NOTICE OF SALE, AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT, OR IN THE ALTERNATIVE REJECTION, OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

UPON CONSIDERATION OF the Motion For Approval Of Solicitation Procedures, Bidding Procedures, Sale Procedures, Including Form And Manner Of Notice Of Sale, Procedures For The Assumption And Assignment, Or In The Alternative Rejection, Of Executory Contracts And Unexpired Leases Of The Debtors (the "Motion") filed by the debtors, MetaMorphix, Inc. and MMI Genomics, Inc. (the "Debtors"), and any response thereto; the Court finding that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. § 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and (iv) notice of the Motion and was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors; it is HEREBY ORDERED as follows:

1. The Motion is GRANTED to the extent set forth herein, and all objections not withdrawn or reflected herein are OVERRULED with prejudice. All capitalized terms not otherwise defined herein shall have the respective meanings set forth in the Motion.

2. <u>Approval of Solicitation Procedures.</u> The Court FINDS, DETERMINES, and DECLARES that the Solicitation Procedures described in the Motion (the "Solicitation Procedures") are reasonably calculated to lead to the submission of the highest and best offer for the sale of the Debtors' assets. The Solicitation Procedures are approved for that purpose.

3. The following procedures, deadlines, and forms (each a "Sale Procedure," and collectively, the "Sale Procedures") are hereby APPROVED and IMPLEMENTED and shall govern the sale of the Debtors' assets (the "Sale") in these cases:

<u>Bidding Procedures.</u>

    (A)    Any person desiring to make a bid for all or substantially all of the Debtors' assets, or any portion thereof, (each a "Bidder," and collectively, the "Bidders") shall submit to the Bidding Receipt Agent an originally-signed, written bid (each a "Bid," and collectively, the "Bids") on or before March 3, 2011 at 4:00 p.m. Eastern Time (or at such later date and time as the Debtors and the Debtors' Official Committee of Unsecured Creditors (the "Committee") may agree) (the "Bid Deadline"). Bids may, but are not required to, conform to the form of the Asset Purchase Agreement attached hereto as **<u>Exhibit B</u>**. The Debtors will forward copies of all Bids to Branhaven by 7:00 p.m. on March 3, 2011.

    (B)    For purposes of these procedures, the "Bidding Receipt Agent" is Adam Hiller, Pinckney, Harris & Weidinger, LLC, 1220 North Market Street, Suite 950, Wilmington, Delaware 19801. At any time, the Debtors may change the identity and/or contact information for the Bidding Receipt Agent by filing a notice with the Court.

    (C)    To be a "Qualified Bid," a bid must:

        (i)    Be a Bid (pursuant to the definition set forth above);

        (ii)    Be received (a) in its originally-signed, written form by the Bidding Receipt Agent on or before the Bid Deadline, (b) by mail (postage prepaid), in person (including but not limited to by courier), or by overnight delivery (such as by FedEx, UPS, DHL, or Express Mail), or (c) in such manner and by such date and time as the Debtors and the Committee in their discretion shall agree in writing;

(iii) Contain information which the Debtors, in their discretion after consultation with Branhaven[1] and the Committee, believe is adequate to describe the asset(s) proposed to be purchased, the consideration offered for the proposed purchase, and any other salient terms proposed in the Bid (a definitive asset purchase agreement is strongly recommended); <u>provided</u> <u>that</u> in the Debtors' discretion, a Bid which is not a Qualified Bid pursuant to the terms of this subparagraph when it is received can subsequently become a Qualified Bid in the event sufficient information is subsequently furnished and relate back to the date that the Bidding Receipt Agent received the original Bid;

(iv) Contain the Bidder's agreement to become solely responsible to cure any and all defaults associated with any executory contracts and/or unexpired leases in connection with which the Bidder intends to receive an assignment, to the extent necessary to obtain approval of the assumption and assignment thereof under § 365 of the Bankruptcy Code;

(v) Be accompanied by a fully executed coversheet in the form attached hereto as **Exhibit A-1** (the "Bid Coversheet"); and

(vi) Be accompanied by a refundable earnest money deposit in the amount of 10% of the total purchase price stated therein (including as later supplemented, the "Deposit") in the form of a certified or bank check, wire transfer, or letter of credit, and provide that such Bid shall remain open and irrevocable until the end of the second business day following the closing of the Sale;

(vii) Not be subject to any financing contingency, contingency relating to the completion of unperformed due diligence, contingency relating to further internal or external approvals or consents (other than approval of the Bankruptcy Court), and must state that it has been approved (subject to stated conditions) by any, and all, governing bodies or investors (e.g., board of directors or minority partners);

(viii) To the extent that the Bid requires the assumption and assignment of any executory contracts and/or unexpired leases of the Debtors, be accompanied by information and assurances satisfactory to the Debtors and the Committee that the Bidder can obtain all required consents, approvals, and licenses to fulfill the terms, conditions and obligations under any and all such executory contracts and

---

[1] To extent that the Sale Procedures require or permit consultation with Branhaven, it is expressly conditioned upon Branhaven not submitting a Bid. Should Branhaven submit or intend to submit a Bid, it is not entitled to engage in any consultation with the Debtors or the Committee that are otherwise required or permitted in the Sale Procedures.

unexpired leases, including but not limited to sufficient information to permit the Court, the Debtors, and any applicable lessors or counterparties to determine the Bidder's ability to comply with the requirements of § 365 of the Bankruptcy Code (to the extent applicable) in connection with them;

(ix) Clearly identify the Bidder, the person(s) for whom the Bid is submitted, all majority investors in and affiliates of the Bidder, and all connections that the Bidder has with the Debtors, any of the Debtors' employees, officers, or directors, Branhaven, and any of the Debtors' known competitors;

(x) Shall be accompanied by a form of Asset Purchase Agreement between the Bidder and the Debtors based upon the form annexed as **Exhibit B**, marked to show the changes proposed by the Bidder (the "Marked APA") (the Bid may be submitted by the Bidder on the Marked APA in lieu of any other written statement or description of the Bid).

(D) After the Bid Deadline, the Debtors shall conduct an auction (the "Auction") beginning on March 8, 2011 at 9:00 a.m. Eastern Time (the "Auction Date") and continuing until concluded. Only the Bidders submitting Qualified Bids may participate in the Auction. Representatives of Branhaven, the Committee, and the United States Trustee's office shall be permitted to attend the Auction. The Auction shall take place at the law offices of Pinckney, Harris & Weidinger, LLC, 1220 North Market Street, Suite 950, Wilmington, Delaware 19801, or at such other place as the Debtors shall give at least 48 hours' notice to each of the Bidders invited to participate. The Debtors, in consultation with Branhaven and the Committee, may establish such administrative rules regarding the conduct of the Auction as they deem appropriate, including but limited to, bidding increments, personal attendance requirements, adjournments, exclusion of visitors, the time allotted for making competing Bids, the sequence of submission of competing Bids, and the manner of making competing Bids.

(E) If (i) the Debtors, in consultation with Branhaven and the Committee, determine after the Bid Deadline that there is only one Qualified Bid, and (ii) Branhaven indicates in writing that it irrevocably waives the right to bid at the Auction, then the Debtors, in consultation with the Committee, may cancel the Auction and treat such Qualified Bid as the Winning Bid (as defined below).

(F) At the beginning of the Auction, the Debtors, in consultation with Branhaven and the Committee, shall identify for all present participants which Bid the Debtors deem to be the highest and best Bid, which shall become the Winning Bid (as defined below) if no higher and better Bids are submitted and accepted by the Debtors (upon consultation with

Branhaven and the Committee), and the Bidder making the Winning Bid is the Winning Bidder (as defined below). Thereafter, and subject to the other procedures set forth herein, each participating Bidder shall be permitted to make one or more competing Bids which (i) include the same terms as such Bidder's previously submitted Bid but higher monetary payments, (ii) include the same terms as any other Bidder's previously submitted Bid but higher monetary payments, or (iii) if (and only if) the Debtors, in consultation with Branhaven and the Committee, consent, different terms. In the event that a Bidder makes a competing Bid that the Debtors do not consider a higher and better offer than a Bid previously submitted by any party, the Debtors may reject the Bid and, in their discretion, may (but shall not be required to) advise the Bidder how much higher such Bid would need in order to be deemed higher and better than the previously submitted Bids. The Bid at the Auction deemed by the Debtors to be the highest and best offer for the Debtors' assets is the "Winning Bid" and the Bidder making the Winning Bid is the "Winning Bidder." Every Bidder submitting a Bid at the Auction shall be deemed to agree that if it is the successful bidder at the Auction, such Bidder shall provide the Debtors with a supplemental deposit which, when added to the initial Deposit payment, shall be 10% of the total Winning Bid.

(G) Immediately prior to the conclusion of the Auction (except to the extent otherwise agreed by the Debtors and the Bidder making the Winning Bid), the Bidder or Bidders making the Winning Bid shall sign all agreement(s), contract(s), instrument(s) or other document(s) evidencing and containing the terms and conditions upon which such bid was made, if it has not already done so.

(H) In addition to selecting the Winning Bid, the Debtors, in consultation with Branhaven and the Committee, shall select the Bid (whether submitted at the Auction or in accordance with the Sale Procedures described above) which, other than the Winning Bid, constitutes the highest and best offer (the "Next Highest Bid" and the Bidder making such Bid is the "Next Highest Bidder").

(I) Except as otherwise provided in these Sale Procedures or further order of the Court, neither the Debtors nor their estates shall be responsible to any person for breakup fees, brokers' fees, or "finder's fees," and all Bidders shall conduct whatever due diligence they require solely at their own expense, and all participation in the Sale, including but not limited to the Auction, shall be at each Bidder's sole expense. The Debtors shall not be required to furnish any Bidder with any overbid protections.

(J) The Debtors, in consultation with Branhaven and the Committee, reserve the right to reject at any time prior to the entry of an order of the Court approving a sale of the Debtors' assets, any offer which the Debtors deem to be (i) inadequate or insufficient, (ii) not in conformity with the

requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Delaware, or the terms and conditions of the Sale set forth herein, or (iii) contrary to the best interests of the Debtors, their estates, and their creditors. The Debtors will have no obligation to accept or submit for Court approval any offer presented prior to, at, or after the Auction. Notwithstanding the foregoing and without regard to footnote 1, any rejection contemplated after an asset purchase agreement is executed shall only be proposed in consultation with the Committee and Branhaven.

Sale Hearing.

(K) A hearing to consider approval of the Sale (the "Sale Hearing") shall be conducted by the Court on **March 9, 2011 at 10:30 a.m. (Eastern Time)** or at such other time as the Court permits or orders. In the event the Court desires to approve the Sale, the Court will enter an order approving the Sale (the "Sale Order").

(L) Subject to entry of the Sale Order, the Debtors shall sell, and the Winning Bidder shall purchase, the agreed portion of the Debtors' assets free and clear of all liens, claims, interests, and encumbrances, in accordance with the terms of the Winning Bid, and closing shall occur on or before March 16, 2011 at 4:00 p.m. or such other date as the Debtors and the Winning Bidder shall agree (the "Closing Date").

(M) In the event the Winning Bidder fails to consummate the Sale on or before the Closing Date, or in the event the Winning Bidder repudiates its obligation to consummate the Sale prior to the Closing Date, the Next Highest Bidder will be deemed to be the Successful Bidder for purposes of the Sale Order, and the Debtors shall be authorized, but not required, to consummate the Sale with the Next Highest Bidder in accordance with the terms of the Next Highest Bid without further order of the Court. In such case, the Winning Bidder's Deposit shall be immediately forfeited to the Debtors, and the Debtors reserve the right to seek any further damages from the Winning Bidder on account of the default.

(N) Except as expressly provided in the Bid, any Sale of the Debtors' assets shall be without representation or warranties of any kind, nature or description by the Debtors, their agents, or their estates, and all such assets shall be transferred "as is," "where is," and "with all faults." THE DEBTORS EXPRESSLY DISCLAIM, AND SHALL BE DEEMED TO HAVE DISCLAIMED, ANY AND ALL WARRANTIES, INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE DEBTORS MAKE NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE NATURE, QUALITY, VALUE OR CONDITION OF ANY ASSET.

Procedures Relating to Deposits.

(O) All Deposits (except those of the Winning Bidder and Next Highest bidder) shall be subject to the jurisdiction of this Court and, except as otherwise provided herein, shall be returned by the Debtors to the unsuccessful bidders as soon as reasonably practicable after the closing of the Sale, except as otherwise provided herein.

(P) All Deposits shall be held by counsel for the Debtors in their counsel's attorney trust account, or in the Debtors' discretion, by a third-party escrow agent (either, a "Custodian") in a segregated, non-interest-bearing bank account. In the event of a dispute concerning the Debtors' right to retain any Deposit, the Custodian shall have no liability to any bidder for the failure to return such Deposit to the bidder, and the bidder's sole remedy shall be to seek relief from this Court to compel the return of the Deposit. In the event of a dispute, the Custodian may interplead the Deposit (or any disputed portion thereof) into the registry of the Court subject to further order. In the event the Custodian, in its discretion, deems it necessary or appropriate to interplead such funds into the registry of the Court, the Custodian may surcharge its costs, including reasonable attorneys' fees, against such funds, after Court approval.

Reservation of Rights.

(Q) The Debtors, in consultation with the Committee, reserve the right to: (i) impose at or before the Auction such other and additional terms and conditions as may be in the interest of the Debtors, their estates, and their creditors (so long as such terms are not materially inconsistent with the terms of the Sale Procedures); (ii) extend the deadlines set forth in the Sale Procedures; (iii) adjourn the Auction at or before the Auction; (iv) adjourn the Sale Hearing without further notice by making an announcement in open court or by the filing of a hearing agenda pursuant to Bankr. D. Del. L.R. 9029-3 containing notice of the adjournment; (v) waive any terms or conditions set forth in these Bidding Procedures, except as otherwise required under the Bankruptcy Code or Bankruptcy Rules; and (vi) withdraw from the Auction some or all of the Debtors' assets at any time prior to or during the Auction or cancel the Auction.

Treatment of Unexpired Leases and Executory Contracts.

(R) The following procedures shall apply to each of the Debtors' unexpired leases and executory contracts that the Debtors may assume and assign to the Purchaser in conjunction with the Sale (each an "Assigned Contract" and collectively, the "Assigned Contracts"):

    (i) The Debtors shall cause the Notice of the Potential Assumption and Assignment of Executory Contracts and Unexpired Leases, in

substantially the form annexed hereto as **Exhibit A-2** (the "Assumption Notice"), to be served by first-class mail on all non-debtor parties to the Assigned Contracts on or before two business days after the entry of the Procedures Order.

(ii) The Debtors shall attach to the Assumption Notice its calculation of the undisputed cure amounts that the Debtors believe must be paid to cure all defaults under each of the Assigned Contracts (each a "Proposed Cure Amount" and collectively, the "Proposed Cure Amounts"). Unless a specified cure amount is stated, the Proposed Cure Amount for any particular non-debtor counterparty to an Assigned Contract is deemed to be $0.00.

(iii) To the extent that the non-debtor party to an Assigned Contract does not (a) file with the Court an objection (the "Contract Objection") to the assumption and assignment of the Assigned Contract (other than with respect to the adequacy of assurance of future performance by the Purchaser of such Assigned Contract) and/or the scheduled Proposed Cure Amount by 4:00 p.m. (prevailing Eastern Time) on the business day prior to the Auction (the "Contract Objection Deadline") and (b) serve a copy of the Contract Objection by electronic mail or facsimile, with the originally-signed copy to follow by mail on that same day, upon counsel for the Debtors and counsel for the Committee, such non-debtor counterparty, and all person on his/her/its behalf, shall (a) be forever barred from objecting to, and shall be deemed to consent to, the Debtors' assumption of the Assigned Contract and assignment of same to the Purchaser, (b) be forever barred from objecting to, and shall be deemed to consent to, the Proposed Cure Amount and from asserting any additional cure amount or other defaults with respect to the applicable Assigned Contract. Except to the extent set forth in a timely Contract Objection, the Debtors, the Purchaser, and all parties in interest shall be entitled to rely solely upon the Proposed Cure Amount as the exclusive amounts due under every Assigned Contract as of the Closing Date, and all parties shall be forever barred and estopped from asserting or claiming against the Debtors and the assignee of the Assigned Contract that any additional amounts are due or defaults exist, or that additional conditions to assumption and assignment must be satisfied under such Assigned Contract.

(iv) <u>Adequate Assurance</u>. Within two business days after a Winning Bid is selected, the Debtors shall provide notice to the non-debtor counterparty to each executory contract and unexpired lease of the identity of the Winning Bidder, any materials furnished by the Winning Bidder in connection with adequate assurance of future performance, and the name and telephone number of a

representative of the Winning Bidder from whom such counterparty can request additional information. The Winning Bidder shall provide any reasonably requested information, and in the event the assignment to the Winning Bidder of any Assigned Contract(s) is denied solely due to the inability of the Debtors to demonstrate adequate assurance of future performance, the Winning Bidder shall neither be excused from consummating the Sale nor entitled to a purchase price adjustment for the exclusion of such Assigned Contract(s). To the extent that the non-debtor party to an Assigned Contract does not (a) file with the Court an objection (the "Adequate Assurance Objection") to the adequacy of assurance of future performance by the Purchaser by 12:00 p.m. (prevailing Eastern Time) on the business day prior to the Sale Hearing (the "Adequate Assurance Objection Deadline") and (b) serve a copy of the Adequate Assurance Objection by electronic mail or facsimile, with the originally-signed copy to follow by mail on that same day, upon counsel for the Debtors and counsel for the Committee, such non-debtor counterparty, and all person on his/her/its behalf, shall (a) be forever barred from objecting to, and shall be deemed to consent to, the Debtors' assignment of the Assigned Contract to the Purchaser, (b) be forever barred from objecting to, and shall be deemed to consent to, the adequacy of assurance of future performance by the Purchaser.

(S) The following procedures shall apply to each of the Debtors' unexpired leases and executory contracts that the Debtors do not assume and assign to the Purchaser in conjunction with the Sale and elect to reject (each a "Rejected Contract" and collectively, the "Rejected Contracts"):

(i) The Debtors may reject any Rejected Contract(s) that they deem unnecessary or burdensome to their estates based upon their sound business judgment by filing and serving a Notice of Rejection, in substantially the form annexed hereto as **Exhibit A-3** (the "Rejection Notice"), upon (i) all non-debtor counterparty(ies) to each such Rejected Contract(s) (or if any such persons are represented by counsel of record in these cases, upon their counsel), and (ii) the Committee.

(ii) Without further notice or order of the Court, and except as provided below, any Rejected Contract shall be deemed rejected effective on the date ("Effective Date of Rejection") that is the later of (a) seven (7) calendar days (if service is by mail, then ten (10) calendar days) after the Debtors serve the Rejection Notice as described above, and (b) if the Rejected Contract is a real property lease, the date that the Debtors unequivocally relinquish control of the premises by turning over keys or "key codes" to the affected landlord.

4. The Debtors are authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the notice requirements established by this Order.

5. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: Feb. 2, 2011
Wilmington, Delaware

_____
HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE