IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>METAMORPHIX, INC., *et al.*,<br><br>Debtors. | Chapter 11<br>Case Nos. 10-10273 (MFW), *et seq.*<br>(jointly administered)<br><br>Re Docket Nos.: 254 |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO INCUR POSTPETITION FINANCING ON A SUPER-PRIORITY BASIS, (II) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL, AND (III) SCHEDULING A FINAL HEARING

UPON CONSIDERATION OF the Debtors' Motion for Entry of an Order (I) Authorizing the Debtors To Incur Postpetition Financing On A Super-Priority Basis, (II) Authorizing The Debtors' Use Of Cash Collateral, And (III) Scheduling A Final Hearing (the "Motion"), filed by the debtors, MetaMorphix, Inc. and MMI Genomics, Inc. (the "Debtors"), and any response thereto; the Court finding that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. § 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and (iv) notice of the Motion and was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors; it is hereby FOUND AND DETERMINED as follows:[1]

A. On January 28, 2010 (the "Petition Date"), a bankruptcy case was commenced against MMI by the filing of an involuntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). On September 30, 2010 (the "Order for Relief Date"), the Court entered an Order for Bankruptcy Relief in connection with MMI and the case

---

[1] Findings of facts shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

was converted to a case under Chapter 11 of the Bankruptcy Code. Since the Order for Relief Date, MMI has managed its affairs and remained in possession of its assets as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. On November 18, 2010 (the "MMIG Petition Date"), MMIG filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since the Order for Relief Date and the MMIG Petition Date, respectively, the Debtors have managed their affairs and remained in possession of their assets as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

B. This Court has jurisdiction over these Chapter 11 cases and the relief set forth herein pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue lies properly with this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C. The Debtors have proposed in the Motion that they intend to seek a final order authorizing the Debtors to incur up to $75,000.00 in principal in postpetition financing (the "Postpetition Financing") from Branhaven, LLC (the "DIP Lender"), which also serves as the agent for the parties holding what is referred to in the Motion as the 12.5% Notes, in accordance with the terms and conditions hereof.

D. The Debtors have requested authority to conduct a sale of substantially all of their assets. The Debtors may not have sufficient available sources of working capital and financing to administer these Chapter 11 cases until that sale may be conducted and closed. Permitting the Debtors to incur the Postpetition Financing is in the best interests of the Debtors' estates and creditors because it may be the only means at this critical juncture of preserving the Debtors' ability to operate until a sale can occur. Based on the record presented by the Debtors, the terms hereof reflect the sound exercise of the Debtors' business judgment.

E. With the credit provided by the DIP Lender, the Debtors will be able to obtain necessary goods and services, thereby permitting the Debtors to create funds with which to pay employees and operate or conduct an orderly wind-down of their business for the benefit of all parties-in-interest while they attempt to get to closing on a sale of substantially all of their assets.

F. The Debtors' need for financing and the use of cash collateral is immediate. The Postpetition Financing will afford the Debtors the liquidity needed to operate until they get to closing on a sale of substantially all of their assets. In the absence of the Postpetition Financing and the use of cash, an immediate shutdown of al aspects of the Debtors' business would be necessary and irreparable harm to the Debtors and their estates would result.

G. Given the Debtors' current financial condition, financing arrangements and capital structure, the Debtors cannot obtain (i) unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense; (ii) unsecured credit allowable under §§ 364(a) and 364(b) of the Bankruptcy Code, or (iii) secured credit pursuant to § 364(c) of the Bankruptcy Code on terms and conditions more favorable to the Debtors' estates than those offered hereunder by the DIP Lender. Financing is also not otherwise available without (i) granting, pursuant to § 364(c)(1) of the Bankruptcy Code, the DIP Lender claims having priority over any and all administrative expenses of the kinds specified in §§ 326, 330, 331, 503(b), 507(a) and 507(b) of the Bankruptcy Code, subject to the Carve-Out described below, and (ii) granting the DIP Lender a lien on the Debtors' assets having priority over any and all preexisting liens, subject to the Carve-Out described below. The DIP Lender has indicated that it is not willing to extend postpetition financial accommodations unless it is granted these protections.

H. Based on the record made by the Debtors before this Court, the terms of the Postpetition Financing are fair and reasonable, are appropriate for a financing offered to a

debtor-in-possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

I.  The DIP Lender is relying on this Interim Order in entering into the Loan Agreement and providing Loans to the Debtors thereunder. Absent the approvals granted herein, the DIP Lender would not provide the Postpetition Financing to the Debtors.

J.  The Debtors have requested immediate entry of this Interim Order pursuant to Fed. R. Bankr. P. 4001(b)(2) and 4001(c)(2). The permission granted herein to obtain the Postpetition Financing is necessary to avoid immediate and irreparable harm to the Debtors. The Court concludes that entry of this Interim Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, provide the Debtors with the necessary liquidity to enhance their prospects for the successful administration of these Chapter 11 cases.

K.  Notice of the Hearing and the relief requested in the Motion was given to (i) counsel for the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the DIP Lender; (iv) all parties that filed requests for notice under Fed. R. Bankr. P. 2002 as of the date of service of such notice; and (v) all other known parties asserting liens against the Debtors' assets. Such notice of the Hearing and the relief requested in the Motion complies with the requirements of §§ 102(1), 364(c) and 364(d) of the Bankruptcy Code and Fed. R. Bankr. P. 2002 and 4001(c) and constitutes adequate notice under the circumstances; and

L.  This Court held a preliminary hearing on the relief requested in the Motion on February 2, 2011 at 11:30 a.m. (the "Preliminary Hearing"), and the relief set forth herein is granted in order to avoid irreparable injury to the Debtors, their estates, and their creditors before a final hearing could be held in accordance with Fed. R. Bankr. P. 4001(c) (the "Final Hearing").

BASED UPON the foregoing findings and conclusions, and upon the record made before this Court at the Preliminary Hearing, and good and sufficient cause appearing therefor, it is hereby ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1. The Motion is hereby GRANTED. All capitalized terms not otherwise defined herein shall have the respective meanings set forth in the Motion. Any objections to the relief granted hereby that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

2. The Debtors are authorized to borrow money from the DIP Lender during the period from the date and time of entry hereof through and including the date on which the final hearing on the Motion (the "Final Hearing") is actually concluded (the "Interim Financing Period"), on the terms and subject to the conditions set forth herein, up to an aggregate principal amount of $75,000.00, on an interim basis. Interest shall accrue on all amounts advanced at the rate of fourteen percent (14%) per annum until repaid.

3. In order to borrow funds hereunder, the Debtors shall send a written funding request (a "Funding Request") by electronic mail to a person designated by the DIP Lender, stating or describing the amount(s) to be borrowed and the payee(s) to which such monies will be delivered. So long as the Funding Request is consistent with the budget attached hereto as **Exhibit A** (the "Budget") or as otherwise authorized by the DIP Lender, subject to a 10% variance, and so long as an Event of Default has not occurred, the DIP Lender shall advance funds to the Debtors (or to the payee(s) identified by the Debtors, at the DIP Lender's option) in the amount(s) requested within one business day after the Funding Request is delivered. The direct payment by the DIP Lender to a third-party payee shall be recorded as a disbursement for purposes of calculating any fees owed pursuant to 28 U.S.C. § 1930(a)(6).

4. In addition, to the extent that the Debtors have, or acquire during these Chapter 11 cases, any assets constituting cash collateral, as defined by § 363(a) of the Bankruptcy Code ("Cash Collateral"), the Debtors are authorized to use such assets through and including the date of the Final Hearing, on the terms and subject to the conditions set forth in this Interim Order, including but not limited to the Budget (subject to a 10% variance).

5. The Debtors are authorized and directed to use the proceeds of the Postpetition Financing and/or any Cash Collateral in conformity and compliance with the Budget and the other terms of this Interim Order.

6. (A) The "Maturity Date" means the first to occur of (i) the closing of a sale of substantially all of the Debtors' assets, (ii) the conversion of the above-captioned cases to cases under Chapter 7 of the Bankruptcy Code, and (iii) the dismissal of the above-captioned cases.

(B) On the Maturity Date, the DIP Lender may terminate the Postpetition Financing (the date of any such termination, the "Termination Date") and declare amounts advanced under the Postpetition Financing (together with any interest thereon, the "Obligations") to be immediately due and payable, effective five (5) business days after notice of such declaration has been received by the Debtors, counsel for the Debtors, counsel for any trustee appointed in connection with these cases, counsel for the U.S. Trustee, and counsel for the Committee. Upon the sale of substantially all of the Debtors' assets, the Debtors shall pay all of the Obligations from the proceeds of the sale.

7. In accordance with § 364(c)(1) of the Bankruptcy Code, the DIP Lender shall have a claim against the Debtors' estates (the "DIP Claim") for any of the unpaid Obligations with the following protections, subject to the terms of this Interim Order and the Carve-Out (as defined below):

a. The DIP Claim shall have priority in payment over any and all other obligations, liabilities, and indebtedness of the Debtors and over any and all administrative expense or priority claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, §§ 326, 330, 331, 365, 503(b), 507(a) and 507(b) of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, their estates, and any successor trustee(s) or any creditors in these Chapter 11 cases or any subsequent proceeding under the Bankruptcy Code.

b. No cost or expense of administration under §§ 105, 326, 328, 330, 331, 364(c)(1), 365, 503(b), 507(a), 507(b), 546(c) or 726 of the Bankruptcy Code or otherwise, including those resulting from the conversion of these Chapter 11 cases pursuant to § 1112 of the Bankruptcy Code, shall be senior to, or *pari passu* with, the DIP Claim.

c. The DIP Lender is hereby granted a fully perfected lien upon all of the Debtors' assets (other than any avoidance actions existing or arising under Chapter 5 of the Bankruptcy Code ("Avoidance Actions")) to secure the Debtors' obligation to repay the DIP Claim, and such lien shall have priority over any and all other liens existing upon the Debtors' assets. The DIP Lender is not hereby waiving any claims against Edward Quattlebaum, to the extent any such claims exist.

8. Notwithstanding any state law or applicable non-bankruptcy law to the contrary, all liens created by this order shall be treated as perfected without the further filing or recordation of any financing statements or other documents with any agency, through and including the 30th day after the Debtors' above-captioned cases are closed or dismissed. Notwithstanding the foregoing, the DIP Lender is authorized to file or record any financing statements or other

documents evidencing the foregoing perfection, and the automatic stay is modified solely for that purpose.

9. Subject to the terms hereof, to the extent of, and only to the extent of, any diminution in the value of the DIP Lender's interest in Cash Collateral and subject to the Carve-Out (as defined below), the DIP Lender shall have additional and replacement security interests and liens (the "Adequate Protection Liens") in and upon all prepetition and postpetition assets and property of the Debtors (tangible, intangible, real, personal and mixed), whether now existing or newly acquired or arising, and wherever located, other than Avoidance Actions; provided that the total of all Adequate Protection Liens shall not exceed the amount of Cash Collateral that the Debtors actually use after the Order for Relief Date or the MMIG Petition Date, respectively. The DIP Lender shall be entitled to attachment of Adequate Protection Liens on assets of the Debtors only with the same validity, priority, amount, and extent as the Agent's prepetition liens, and to the extent that any such liens may be subject to challenge, avoidance, or other limitation, such Adequate Protection Liens shall be similarly subject. To the extent that unencumbered funds are not available to pay administrative expenses in full, the Adequate Protection Liens shall be subject to payment of the Carve-Out.

10. Any Obligations, Adequate Protection Liens, and any other interest in Cash Collateral shall be subject to and limited by the "Carve-Out," which means and includes: (a) any and all amounts due to the Clerk of the Court and to the United States Trustee pursuant to 28 U.S.C. § 1930(a); and (b) the aggregate accrued and unpaid fees and expenses payable under §§ 330 and 331 of the Bankruptcy Code to professionals retained pursuant to an order of the Court by the Debtors or the Committee; provided that the Carve-Out for Pinckney, Harris & Weidinger, LLC and Klehr Harrison Harvey Branzburg LLP'sfees (but not expenses) for

services rendered between February 3, 2011 and March 9, 2011 shall not exceed $40,000.00. Said professional fees are and shall remain subject to allowance and approval by this Court. The Carve-Out shall survive the termination or expiration of this order. So long as this order shall remain in effect, the Debtors shall be permitted to pay administrative expenses allowable and payable under §§ 330 and 331 of the Bankruptcy Code, as the same may be due and payable pursuant to any orders of this Court.

11. The Debtors shall provide daily cash receipt reports to the DIP Lender and the Committee each business day, at the close of business. Additionally, the Debtors shall provide daily cash disbursement reports to the DIP Lender and the Committee at least two (2) hours before a disbursement is made. If the DIP Lender does not respond within 2 hours, the disbursement shall be presumed acceptable to the DIP Lender. The DIP Lender shall endeavor to provide a response within 2 hours. In the event that the DIP Lender responds by objecting to the disbursement, the Debtors and the DIP Lender shall promptly confer in good faith regarding the propriety of the disbursement and its compliance with the approved budget. Any objection from the DIP Lender is restricted to an objection on the basis that said disbursement violates the Budget or this Order.

12. The Debtors are authorized to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements as the DIP Lender may reasonably require, as evidence of and for the protection of the DIP Claim to effectuate the terms and conditions of this Interim Order. The Debtors and the DIP Lender are hereby authorized to implement any modifications of the Postpetition Financing and/or the terms of the Debtors' use of any Cash Collateral which are not material and adverse to the Debtors or their estates without

further order of this Court, so long as the Committee consents. The terms of all prior orders authorizing the use of Cash Collateral remain in full force and effect.

13. An "Event of Default" means that the Debtors shall use Cash Collateral or funds borrowed to pay any expense not consistent with the Budget, subject to a 10% variance.

14. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan in the Debtors' Chapter 11 cases (and the Obligations shall not be discharged by the entry of any such order or pursuant to § 1141(d)(4) of the Bankruptcy Code); (b) converting these Chapter 11 cases (or either of them) to cases under Chapter 7 of the Bankruptcy Code; or (c) dismissing these Chapter 11 cases (or either of them). If an order dismissing these Chapter 11 cases (or either of them) under § 1112 of the Bankruptcy Code or otherwise is at any time entered, the DIP Lender may require that such order shall provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that the Obligations shall continue in full force and effect and shall maintain their priorities as provided in this order until all obligations in respect thereof shall have been paid and satisfied in full (and that such Obligations shall, notwithstanding such dismissal, remain binding on all parties-in-interest).

15. The provisions of this order shall be binding upon and inure to the benefit of the DIP Lender, the Debtors, the Debtors' estates, and their respective successors and assigns, including but not limited to any trustee or other fiduciary hereafter appointed in these cases as a legal representative of the Debtors or their estates.

16. Notwithstanding Fed. R. Bankr. P. 7062, the terms and conditions of this order shall: (a) be immediately enforceable pursuant to Fed. R. Bankr. P. 8005; and (b) not be stayed absent (1) an application by a party in interest for such stay in accordance with Fed. R. Bankr. P.

8005, and (2) entry of an order after hearing on notice to the Debtors, the Committee, the DIP Lender, and the United States Trustee.

17. Not less than 21 days before the Final Hearing, the Debtors shall cause copies of a notice of entry of this order, together with a copy hereof, to the parties who originally received a copy of the Motion, and any other party that has filed a request for notice with this Court. The notice of entry of this order shall state that any party in interest objecting to the entry of a Final Order on the Motion shall file a written objection, and shall serve upon the same counsel for the Debtors, counsel for the DIP Lender, counsel for the Committee, and counsel for the United States Trustee, on or before March 2, 2011 at 4:00 p.m. Prevailing Eastern Time.

18. The Final Hearing on the Motion shall be held on March 9, 2011 at 11:30 a.m. Prevailing Eastern Time.

19. The Debtors' use of cash collateral from the date of this Order forward and its borrowings hereunder are governed entirely by this Order and the budget attached hereto. The Court's prior cash collateral orders remain effective but only for the time periods that they covered.

20. The Court finds that the Debtors, the Committee and the DIP Lender have negotiated this agreement in good faith, represented by professionals and legal counsel. The parties have had a full and fair opportunity to structure this agreement and to understand its ramifications.

Dated: Feb 2, 2011
Wilmington, Delaware

THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE